S91P1481. JARRELL v. THE STATE.
(413 SE2d 710)

BENHAM, Justice.

David Alfred Jarrell originally was convicted and sentenced to death in 1974. The judgment was affirmed in *Jarrell v. State*, 234 Ga. 410 (216 SE2d 258) (1975). However, his death sentence was vacated in state habeas proceedings. *Jarrell v. Zant*, 248 Ga. 492 (284 SE2d 17) (1981). The case is here again on appeal from the resentencing trial.[1] Finding error in the trial court's excusal of a prospective juror

[1] After obtaining state habeas relief as to sentence, Jarrell sought federal habeas relief as to his conviction. Ultimately, this relief was denied. *Jarrell v. Balkcom*, 735 F2d 1242 (11th Cir. 1984), cert. den. 471 U. S. 1103 (105 SC 2331, 85 LE2d 848), reh. den. 473 U. S. 921 (105 SC 3547, 87 LE2d 670) (1985). The resentencing trial began on September 10, 1990, and ended September 22, 1990. Jarrell filed a motion for new trial on October 22, 1990. An

and in the court's acceptance of an inadequate sentencing verdict, we reverse and remand for resentencing.

1. A prospective juror testified on voir dire examination by the state that she "believe[d] in the death penalty" and that for bad crimes the death penalty was "justifiable." However, when asked by the state if she would be able to impose or vote for a death sentence, she testified she was not sure. The state then asked her if, "without knowing any of the evidence of the case," she would "be leaning" toward a life sentence. She answered, "Probably."

On examination by the defense, the prospective juror testified she would consider all the evidence before making a decision, and would follow the instructions of the court.

The court asked her:

> As I understand, you tend to lean more at this point toward the life sentence; is that right, that you have some qualms about giving the death penalty?

She answered, "Yes."

Over objection, the trial court excused the prospective juror because she was "going into the trial of this case leaning toward an imposition of a life sentence," and therefore "would not be a fair and impartial juror."

As a general proposition, a juror who merely "leans" one way or the other before hearing any evidence is not disqualified. See, e.g., *Waters v. State*, 248 Ga. 355 (2) (283 SE2d 238) (1981). This proposition applies with particular force to a juror who "leans" toward a life sentence before hearing any evidence, since a death penalty cannot be imposed absent evidence to support a finding of at least one statutory aggravating circumstance. OCGA § 17-10-30 (c).

The death-qualification test is

> whether the juror's views [on capital punishment] would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." [*Wainwright v. Witt*, 469 U. S. 412, 424 (105 SC 844, 83 LE2d 841) (1985).]

As we pointed out in *Alderman v. State*, 254 Ga. 206, 207 (327 SE2d 168) (1985), "[t]his standard is not transgressed if the juror merely expresses 'qualms' about capital punishment. . . ." Further voir dire

amended motion was filed April 18, 1991. After hearing, the motion was denied on June 4, 1991. The case was docketed in this court on August 12, 1991, and argued orally on January 21, 1992.

examination of this juror might have established a reluctance to impose a death sentence so strong it would "prevent or substantially impair" the performance of her duties as a juror. Or it might have established the contrary. The voir dire testimony actually elicited, however, established no more than that the juror had some "qualms" about imposing a sentence she supported in principle and, before hearing any evidence, leaned toward a life sentence. Her testimony does not support a finding that she was disqualified and her excusal is reversible error. *Davis v. Georgia*, 429 U. S. 122 (97 SC 399, 50 LE2d 339) (1976); *Pope v. State*, 256 Ga. 195, 202 (7 e) (345 SE2d 831) (1986).

2. If a jury recommends a death sentence, it must "designate in writing . . . the aggravating circumstance or circumstances which it found beyond a reasonable doubt." OCGA § 17-10-30 (c).

> This written finding should recite all the essential, pertinent elements of the statutory aggravating circumstances found by the jury. At a minimum, the jury's intent must be shown with sufficient clarity that this court can rationally review the jury's finding. Cf. Godfrey v. Georgia, 446 U. S. 420, 428 (100 SC 1759, 64 LE2d 398) (1980). [*Romine v. State*, 251 Ga. 208, 213 (305 SE2d 93) (1983).]

The jury was given instructions on two statutory aggravating circumstances contended by the state, namely, that the offense of murder was committed while the offender was engaged in the commission of another capital felony, OCGA § 17-10-30 (b) (2), and that the offense of murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim, OCGA § 17-10-30 (b) (7).

The jury's verdict was:

> We, the jury, find the following statutory aggravating circumstance(s) to exist beyond a reasonable doubt (Fill in blanks):
>
> Armed robbery
> Depravity of mind — preverted (sic)
> Torture — mental anguish[2]

As we have held consistently, the § b (7) aggravating circumstance has two parts:

---

[2] The non-emphasized portion of the verdict was pre-printed on the verdict form.

First, the murder must be "outrageously or wantonly vile, horrible or inhuman." [Cit.] Second, the offense of murder must involve either torture, depravity of mind, or an aggravated battery to the victim (or a combination of these three elements). [Cits.] [*Black v. State*, 261 Ga. 791 (18) (410 SE2d 740) (1991).]

A jury's § b (7) verdict cannot be sustained if it "completely omits an essential element of the statutory aggravating circumstance." Ibid. Here, as in *Black v. State*, the "jury's verdict omitted any portion of the first part of the § b (7) circumstance."

Concerning the § b (2) finding, there is no indication in the jury's verdict that the offense of armed robbery was committed contemporaneously with the murder, as the statute requires. In *Romine v. State*, supra, the trial court dealt with a similar situation by polling the jury concerning its § b (2) finding. Id., 251 Ga. at 212-213. We held that the poll was sufficient to clarify the jury's written finding. In this case, the trial court refused to poll the jury "as to the aggravating circumstances." Absent such clarification, the jury's § b (2) finding, like its § b (7) finding was insufficient.[3]

3. Jarrell's death sentence is reversed. Since the evidence is sufficient to support proper § b (2) and § b (7) findings, the state may again seek a death sentence. *Page v. State*, 257 Ga. 538 (361 SE2d 153) (1987).

*Judgment reversed and remanded for resentencing. Clarke, C. J., Weltner, P. J., Hunt and Fletcher, JJ., concur; Bell J., dissents.*

DECIDED FEBRUARY 20, 1992.

*Michael Mears & Associates, Michael Mears*, for appellant.

*Thomas C. Lawler III, District Attorney, Debra K. Turner, Assistant District Attorney, Michael J. Bowers, Attorney General, Robert D. McCullers, Staff Attorney*, for appellee.

---

[3] We recognize the difficulties inherent in requiring lay jurors to draft their own verdicts. We do not read the Code's requirement that the jury's death-penalty verdict be "in writing," OCGA § 17-10-30 (c), to mean that portions of the verdict could not be pre-printed. (Indeed, part of the verdict was pre-printed in this case. See footnote 2.) The Code requires only that the jury "designate" its findings "in writing," not that it draft the entire verdict. Ibid.