### A96A0139. RHODES v. THE STATE.
(470 SE2d 790)

Judge Harold R. Banke.

Terry Rhodes was convicted of armed robbery, aggravated assault with intent to rape, and aggravated assault with a deadly weapon. All three crimes were committed against the same victim. Rhodes enumerates eight errors, primarily challenging the denial of certain requested jury charges, the trial court's rulings on certain jury strikes, and the propriety of part of the State's closing argument.

On appeal, the evidence must be viewed in a light most favorable to the verdict and Rhodes no longer enjoys the presumption of innocence. *Rigenstrup v. State*, 197 Ga. App. 176, 180-181 (4) (398 SE2d 25) (1990). Viewed in that light, the State's evidence was as follows. In late morning, as the victim was walking to work on a heavily wooded path behind her apartment complex, Rhodes ran up behind her with a knife. The victim immediately volunteered all of her money, seven $1 bills. At knifepoint, Rhodes grabbed her arm, dragged her into some bushes and ordered her to lie down. He pulled her to the ground by her arm and untied her belt, threatening to stab her if she moved. While he straddled her and undid her pants, he still had the knife in his hand. Then suddenly he abandoned his intentions and ran back toward her apartment complex.

The victim immediately called the police describing her attacker as a black male, with large eyes, mustache and straggly beard, wearing blue jeans, large shoes or possibly boots, a white hooded shirt and a denim jacket. About a minute after hearing the broadcast radio description, Officer W. D. Harvey spotted a black male wearing light jeans and brown boots, exiting the woods behind the victim's apartment complex. After Rhodes boarded a MARTA bus, Harvey immediately intercepted the bus, boarded it and questioned him. Harvey

explained that he had "a situation" nearby and that Rhodes fit the description provided in a lookout and that he needed to take him back to the scene to see if the victim could identify him. When Harvey stopped him, Rhodes was wearing a blue plaid shirt and did not have a white hooded sweatshirt or a knife. Harvey noticed Rhodes had an unusual speech pattern.

At the field showup, from close range, the victim observed Rhodes, who was seated in the rear of the police car. She immediately recognized him and also claimed she remembered his distinctive voice. Despite searching the densely wooded area, police never discovered the knife or other clothing.

At trial, the victim testified that the perpetrator had an unusual voice, and that she remembered seeing two rings on her attacker's left hand. She testified that she had seen the same man on the same path wearing the same clothes about a week earlier. Detective Brown testified that upon booking Rhodes he noticed: he was right-handed, had a northern accent, and a mustache and beard, possessed four $1 bills, and was wearing two rings and Texas Steer boots.

Although the bootprint found at the scene and Rhodes' boots were the same size and design, the State's forensic expert was unable to be more definite because the boot impression had been left in loose sand and lacked detail. *Held*:

1. The trial court did not err by refusing to give the requested charge on footprint evidence. Rhodes requested the pattern charge on fingerprints with "shoe impression" substituted wherever the word "fingerprint" appeared. The requested charge was inappropriate because the State's case did not rely solely on the shoe impression evidence. Compare *Gilbert v. State*, 176 Ga. App. 561, 563 (4) (336 SE2d 828) (1985); *Mercer v. State*, 169 Ga. App. 723, 725 (1) (314 SE2d 729) (1984). Nor did the charge conform to the evidence or make good sense. See *Harris v. State*, 202 Ga. App. 618, 621 (4) (c) (414 SE2d 919) (1992).

2. Rhodes' trial counsel's decision not to file a motion to suppress the physical evidence obtained upon his arrest did not constitute ineffectiveness. To establish ineffectiveness, a defendant must prove not only that his trial counsel's performance was deficient, but also that the deficiency was so harmful that there was a reasonable probability that the result of the trial would have been different but for defense counsel's substandard performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Brown v. State*, 257 Ga. 277, 278 (2) (357 SE2d 590) (1987).

After the new trial hearing, the trial court specifically found that Harvey had probable cause to stop Rhodes and take him back to the scene of the crime for a showup and that Rhodes' counsel was not ineffective for failing to file a motion to suppress. Because we are

unable to find clearly erroneous the trial court's determination that Rhodes' trial counsel's performance was not ineffective, we need not address the second prong of *Strickland*, supra. *Middlebrooks v. State*, 208 Ga. App. 23, 24 (430 SE2d 163) (1993).

3. The trial court did not err in accepting the State's race-neutral explanations for striking six black jurors. Under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), unless it is shown to be clearly erroneous, a trial court's finding must be affirmed. *Smith v. State*, 264 Ga. 449 (1) (448 SE2d 179) (1994).

No transcript of voir dire was made. See *State v. Graham*, 246 Ga. 341, 343 (271 SE2d 627) (1980). Both the victim and Rhodes are black. The State used six of six peremptory challenges to strike black prospective jurors. After the State offered race-neutral reasons for each of its six strikes, Rhodes, as the opponent of the strikes, had the burden of persuasion. See *Chandler v. State*, 266 Ga. 509 (467 SE2d 562) (1996). Our review of the transcript of the *Batson* hearing, persuades us that after the State offered race-neutral reasons for each of its strikes, Rhodes failed to satisfy his burden of persuasion that any of these reasons was pretextual. *Chandler*, supra; *Smith*, 264 Ga. at 451 (1). Accordingly, we find no error.

4. The trial court properly determined that Rhodes' strike of juror no. 1 was improper. The prosecutor raised a challenge under *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992) to defense counsel's use of 11 of 12 strikes of white prospective jurors. After hearing defense counsel's and the State's arguments on each strike, the trial court accepted all the reasons as race-neutral except for the explanation as to juror no. 1. After reviewing the transcript, and giving the trial court's finding great deference, we are not able to find that the trial court's determination was clearly erroneous. See *Minor v. State*, 264 Ga. 195, 197 (5) (442 SE2d 754) (1994); *Sorrells v. State*, 218 Ga. App. 413 (2), 414 (461 SE2d 904) (1995). Nor are we able to find that the trial court improperly shifted the burden of persuasion to Rhodes. See *Chandler*, supra.

5. The trial court properly refused the proposed charge on identification. The trial court fully charged the jury on identification using the pattern charge which included the essential points in the proposed instruction. Suggested Pattern Jury Instructions, Volume II: Council of Superior Court Judges of Georgia, pp. 39-40. It is not necessary to charge the exact language requested when the pertinent principles are covered. *Rowell v. State*, 176 Ga. App. 309, 310 (3) (335 SE2d 689) (1985).

6. The State did not improperly comment on Rhodes' right to remain silent. "Reversal for improper comment by the prosecutor requires a finding either that 1) the prosecutor's manifest intention was to comment on the accused's failure to testify, or 2) the remark

was of such a character that a jury would naturally and necessarily take it to be a comment on the accused's failure to testify. *Ranger v. State*, 249 Ga. 315, 319 [(3)] (290 SE2d 63) (1982)." *LeMay v. State*, 265 Ga. 73, 75 (4) (453 SE2d 737) (1995). In this case, the prosecutor did not comment on Rhodes' failure to testify, but rather, on Rhodes' failure to present certain evidence in rebuttal. Although closing arguments were not transcribed, our review of the discussion pertaining to Rhodes' mistrial motion does not show a manifest intention to comment on Rhodes' failure to testify or that the jury would have naturally and necessarily interpreted the remarks in that manner.

7. The trial court properly denied the charges on the lesser included offenses of simple assault, simple battery, robbery and theft by taking. "As a general rule, a written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense. *Poole v. State*, 205 Ga. App. 652 (4) (423 SE2d 52)." *James v. State*, 210 Ga. App. 454 (2) (a) (436 SE2d 565) (1993). The victim testified that 1) Rhodes came at her with a knife having a five-inch blade, 2) Rhodes had the knife in his hand as he undid her belt, 3) Rhodes grabbed her by the arm as he dragged her off the path into some bushes, 4) she was scared to death, and 5) with the knife in his hand, Rhodes threatened to stab her if she moved as she lay on the ground. A photograph depicting an injury to the victim's arm was admitted into evidence. Under these facts, we do not find that any of the four requested instructions on lesser included offenses was appropriate. See *Harris*, 202 Ga. App. at 621 (4) (c) (denial of charge request proper where not authorized by the evidence).

8. The trial court correctly determined that all three counts, armed robbery, aggravated assault with intent to rape and aggravated assault with a deadly weapon did not merge into one count. The jury returned a verdict of guilty on all three counts. On each count, Rhodes received a concurrent sentence of ten years to serve five. Later, in its order denying the motion for new trial, the court decided to merge the aggravated assault with a knife count and the aggravated assault with intent to rape count. However, the trial court did not merge the convictions for armed robbery and aggravated assault with intent to rape.

The essential elements of armed robbery are: with intent to commit theft, taking the property from the person of another, by the use of an offensive weapon. OCGA § 16-8-41 (a). Whereas, the essential elements of aggravated assault are: an assault with intent to rape, by the use of a deadly weapon. OCGA § 16-5-21 (a) (1), (2). In this case, after Rhodes had already obtained the victim's money at knifepoint and completed the crime of armed robbery, he then forced the victim at knifepoint into the bushes, made her lie down, untied her belt,

straddled her, and threatened to stab her if she moved. The evidence shows these were separate offenses and the same facts were not used to prove both. Consequently, the offenses did not merge. See *Miller v. State*, 174 Ga. App. 42, 44-45 (5) (329 SE2d 252) (1985).

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED APRIL 30, 1996 —
RECONSIDERATION DISMISSED JUNE 21, 1996.

*Zion, Tarleton & Siskin, Jonathan J. Wade*, for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Fran W. Shoenthal, Assistant District Attorneys*, for appellee.