## S05P1438. NANCE v. THE STATE.
(623 SE2d 470)

BENHAM, Justice.

A jury convicted Michael W. Nance in 1997 of malice murder, felony murder, aggravated assault, theft by taking, criminal attempt to commit armed robbery, and possession of a firearm during the commission of a felony. He was sentenced to death for malice murder. This Court affirmed the convictions, but reversed the death sentence due to a prospective juror being improperly qualified to serve on the jury. Nance v. State, 272 Ga. 217 (6) (526 SE2d 560) (2000). In the 2002 sentencing trial that followed the reversal of the imposition of the death penalty, a jury recommended a death sentence for Nance after finding the existence of two statutory aggravating circumstances beyond a reasonable doubt: the offense of murder was committed by a person with a prior record of conviction for a capital felony; and the murder was committed while the defendant was engaged in the commission of another capital felony. OCGA § 17-10-30 (b) (1), (2). Finding no error, we affirm the death sentence.[1]

1. The evidence adduced at trial showed that Nance stole a 1980 Oldsmobile Omega and drove to a bank in Gwinnett County on December 18, 1993. He entered the bank wearing a ski mask and gloves and carrying a .22 caliber revolver, and demanded cash. He told the head bank teller she would be the first one to die if the police came. Despite Nance's threats to kill them if they used dye packets, the tellers slipped two dye packets into the bags with the money. Nance exited the bank and got into the Oldsmobile where the dye packets activated, emitting red dye and tear gas. Nance abandoned the Oldsmobile, taking his gun with him and leaving his ski mask and the dye-stained bags of money in the car.

Nance ran across the street to a liquor store parking lot where Dan McNeal, who had just made a purchase at the liquor store, was standing. Gabor Balogh had just left the liquor store and was backing his car out of a parking space when Nance ran around the front of Balogh's car, yanked open the driver's door, and thrust his gun into the car. McNeal heard arguing and Balogh saying, "no, no" as he leaned away from Nance and raised his left arm defensively. Nance shot Balogh in the left elbow and the bullet entered his chest and damaged his heart, which caused his death shortly thereafter.

---

[1] Nance's sentencing trial took place from August 29 to September 20, 2002, when the jury recommended a death sentence for the malice murder conviction. Nance filed a motion for new trial on October 18, 2002, which he amended on September 24 and October 1, 2004. The trial court denied the amended motion for new trial on March 11, 2005, and Nance filed a timely notice of appeal on April 11, 2005. The case was docketed in this Court on May 19, and was orally argued on September 6, 2005.

Nance then pointed the gun at McNeal and demanded his keys. Instead of complying with the demand, McNeal ran around the side of the liquor store, causing Nance to fire a shot at him. McNeal was not hit and ran back around the store to the parking lot where he went to Balogh's car and saw him slumped over and gasping for breath as he died. Nance ran to a nearby gas station where he surrendered after a standoff with police.

In addition to the facts surrounding the murder of Gabor Balogh, the State presented evidence that Nance had robbed another bank in Gwinnett County three months earlier, during which he had made a similar threat to kill the teller. The State established that Nance pled guilty in federal court to committing the two bank robberies, and also presented evidence that Nance had been convicted of armed robbery in Kansas in 1984.

The evidence was sufficient to authorize the jury to find the statutory aggravating circumstances beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 17-10-35 (c) (2).

2. The Georgia death penalty statutes are not unconstitutional. *Gregg v. Georgia,* 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976); *Riley v. State,* 278 Ga. 677, 686 (8) (604 SE2d 488) (2004). The Georgia death penalty scheme does not violate the Sixth Amendment because the jury must find beyond a reasonable doubt the statutory aggravating circumstances necessary to make a defendant eligible for the death penalty. See *Ring v. Arizona,* 536 U. S. 584, 609 (122 SC 2428, 153 LE2d 556) (2002); *Henry v. State,* 278 Ga. 617 (2) (604 SE2d 826) (2004). Contrary to Nance's assertion, there is no requirement that non-statutory aggravating evidence be proven beyond a reasonable doubt. "While *statutory* aggravating circumstances must be proved beyond a reasonable doubt, the jury is not required to 'evaluate each and every evidentiary vignette pursuant to the reasonable doubt standard.' [Cit.]" (Emphasis in original.) *Ward v. State,* 262 Ga. 293, 301 (29) (417 SE2d 130) (1992). The trial court in this case properly instructed the jury it must find beyond a reasonable doubt the existence of one or more statutory aggravating circumstances in order to impose death or life imprisonment without parole, and that it could impose life imprisonment with the possibility of parole for any reason or no reason. See *Ward,* supra. We find no error.

3. Nance claims the trial court erred by refusing his request to conduct a hearing on whether he should be required to wear a stun belt during his 2002 sentencing trial. A stun belt is an electronic security device worn by a prisoner that can be activated by a remote transmitter which enables law enforcement personnel to administer an incapacitating electric shock if the prisoner becomes disruptive. Unlike shackles, it is worn under the prisoner's clothes and is not

visible to the jury. Nance had worn a stun belt at his 1997 trial. Before the 1997 trial, the trial judge, who also presided at the 2002 sentencing trial, agreed to the State's request that Nance wear a stun belt in court after conducting a pretrial hearing where evidence was received that Nance had threatened to "bite the nose off" the prosecuting attorney during the trial. At that hearing, witnesses testified about the mechanics of the stun belt, its advantages, and possible alternatives, and Nance testified about the alleged impact a stun belt would have on his comfort and ability to concentrate. The trial judge stated in 2002 he remembered the evidence from the 1997 stun belt hearing and said he could not disregard Nance's threat, even after the passage of several years. He denied Nance's request to conduct another hearing and allowed the use of a stun belt as a security measure at Nance's sentencing trial.

It is "well established that the use of extraordinary security measures to prevent dangerous or disruptive behavior which threatens the conduct of a fair and safe trial is within the discretion of the trial court." *Young v. State*, 269 Ga. 478 (2) (499 SE2d 60) (1998). The trial court conducted a hearing in this case to determine the necessity of a stun belt and concluded the use of a stun belt was warranted by the threat and would not interfere with the ability of the defendant to receive a fair trial. See id. The trial court did not err by failing to hold a second hearing in 2002; the only change in circumstance since the 1997 hearing offered by Nance was the passage of time and this was obvious to the trial court without the need for a second hearing. We find no abuse of discretion by the trial court in its ruling on this issue.

4. After conducting hearings on the procedures employed by the State of Georgia while carrying out an execution by lethal injection, the trial court ruled that these procedures are not unconstitutional. We find no error. See *Riley v. State*, supra, 278 Ga. at 689 (15). See also *Dawson v. State*, 274 Ga. 327, 334-335 (554 SE2d 137) (2001).

5. During individual voir dire, the prosecutor explained to each prospective juror the State would go first and present aggravating evidence and the defendant would then present mitigating evidence. The prosecutor also provided brief definitions of what constituted aggravating and mitigating evidence. Nance claims the definitions of mitigating evidence were sometimes misleading, but he never objected at trial to any of these comments by the prosecutor so this claim is waived on appeal. See *Rhode v. State*, 274 Ga. 377, 380-381 (7) (552 SE2d 855) (2001); *Earnest v. State*, 262 Ga. 494, 495 (1) (422 SE2d 188) (1992).

6. During the individual voir dire of prospective juror Johnson, Nance's counsel asked a question that listed the specific circumstances of Nance's case and then inquired of the prospective juror whether she could vote for a life sentence under those circumstances.

Contrary to Nance's contention on appeal, the trial court properly sustained the State's objection that the question called for prejudgment. See *Sallie v. State*, 276 Ga. 506, 509-510 (3) (578 SE2d 444) (2003) ("[Q]uestions that call for prejudgment are improper in a voir dire examination.").

7. Nance claims five prospective jurors were erroneously qualified to serve on the jury because they were opposed to voting for one of the sentences authorized by law. "The proper standard for determining the disqualification of a prospective juror based upon his views on capital punishment 'is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Greene v. State*, 268 Ga. 47, 48 (485 SE2d 741) (1997), quoting *Wainwright v. Witt*, 469 U. S. 412, 424 (II) (105 SC 844, 83 LE2d 841) (1985). A prospective juror is not disqualified because he or she is leaning for or against a death sentence or another possible sentence. *Mize v. State*, 269 Ga. 646, 652 (6) (d) (501 SE2d 219) (1998). However, the prospective juror is disqualified if possessed with an unwavering bias in favor of or against one of the possible sentences authorized by law such that the prospective juror could not meaningfully consider one of the three possible sentences as a verdict. See *Sallie v. State*, supra, 276 Ga. at 508 (2); *Lance v. State*, 275 Ga. 11, 15 (8) (560 SE2d 663) (2002). On appeal, our inquiry is whether the trial court's qualification of the prospective juror is supported by the voir dire record as a whole. *Greene v. State*, supra, 268 Ga. at 49. An appellate court must pay deference to the finding of the trial court and this deference includes the trial court's resolution of any equivocations or conflicts in the prospective juror's responses on voir dire. Id. "Whether to strike a juror for cause is within the discretion of the trial court and the trial court's rulings are proper absent some manifest abuse of discretion." Id. at 50.

A. *Prospective juror Kenerly*. Mr. Kenerly indicated his mother had been murdered in 1979 and that he regularly banked at the bank branch robbed by Nance minutes before he killed Mr. Balogh in December 1993. He stated that neither circumstance would affect his ability to be fair and impartial in this case. Although he said in response to one question he could not consider parole for someone convicted of murder and other crimes, he stated several other times he could vote for all three possible sentences, including life imprisonment with the possibility of parole, depending on the evidence. Since the prospective juror stated he could vote for all three possible sentences, the trial court did not abuse its discretion by finding that he was qualified to serve. *Sallie v. State*, supra, 276 Ga. at 508 (2). See *Greene v. State*, supra, 268 Ga. at 48-50.

B. *Prospective juror Barrett.* Nance argues Mr. Barrett should have been excused for cause because he was opposed to a sentence of life with the possibility of parole. Mr. Barrett stated in voir dire he could vote for all three possible sentences and that the death penalty was appropriate in some cases. In response to a question by Nance's counsel, Mr. Barrett said he could not consider life with the possibility of parole for someone convicted of malice murder. In later questioning, however, Mr. Barrett said he was a religious man and he believed someone convicted of murder could be forgiven and rehabilitated. He then reconsidered life with parole and said he could vote for life with parole for someone convicted of malice murder. Despite his equivocation, the totality of Mr. Barrett's responses showed he could consider and vote for all three possible sentences. Accordingly, the trial court did not abuse its discretion by finding that he was qualified to serve. See *Greene v. State,* supra, 268 Ga. at 48-50.

C. *Prospective juror Eberhardt.* Mr. Eberhardt stated he could vote for all three possible sentences, but he was "90 percent" opposed to life with the possibility of parole for a convicted murderer. He said he believed in an eye for an eye even though he also believed that not all murderers should receive the death penalty. He later said he could vote for life with parole if it was justified. In response to questioning by Nance's counsel, he stated he could give a sentence of life with the possibility of parole depending on the circumstances of the case, such as self-defense or a "thousand other [circumstances]." When Nance's counsel reminded him Nance had been convicted of malice murder and there were no longer any defenses to that conviction, Mr. Eberhardt maintained he could vote for life with the possibility of parole. Although Mr. Eberhardt indicated he was leaning away from a sentence of life with the possibility of parole, he stated several times he could consider and vote for such a sentence. We conclude, based on his total responses, that the trial court did not abuse it discretion by finding that Mr. Eberhardt was qualified to serve. See *Greene v. State,* supra, 268 Ga. at 48-50; *Mize v. State,* supra, 269 Ga. at 652 (6) (d).

D. *Prospective juror Syall.* Ms. Syall said that "if you cause death, death should come to you. You reap what you sow." However, she also stated she could consider all three possible sentences for a convicted murderer. She later stated she did not believe someone convicted of a violent crime could be rehabilitated, and believed a convicted murderer should never be considered for parole. But, when asked again if she could consider life with parole, she responded, "I could probably give that. . . ." When asked how she could square her ability to consider a sentence of life with the possibility of parole with her opposition to parole for a convicted murderer, she replied, "I feel like I'm being asked two different questions. My belief is that if you killed someone, you should get death. But I think, too — until the evidence

is given to me, I can make that decision that, yes, he could get parole, but that's only with the evidence." She repeated several times, under questioning from both parties and the trial court, that she could consider life with the possibility of parole for someone convicted of murder. When asked by defense counsel if she could *give* a life with parole sentence in a case involving deliberate malice murder, she said, "Yes; with the evidence." Compare *Nance v. State*, supra, 272 Ga. at 222 (6). The trial court denied Nance's motion to disqualify her for cause after noting that, although Ms. Syall had taken inconsistent positions throughout her voir dire questioning, she had repeatedly stated she could consider all three sentencing options. We find no abuse of discretion. See *Sallie v. State*, supra, 276 Ga. at 508 (2); *Lance v. State*, supra, 275 Ga. at 16 (8) (a).

E. *Prospective juror Burke.* Mr. Burke stated he could fairly consider all three possible sentences. In response to a question by defense counsel about whether people who have committed violent crimes could be rehabilitated, he said everybody should get a second chance. Defense counsel asked if those convicted of "intentional and deliberate" malice murder should ever be considered for parole, and Mr. Burke said no, but he also said he could consider a sentence of life with the possibility of parole in this case because he did not know the evidence. When asked how he could reconcile those two positions, Mr. Burke described a situation where he could give a life with the possibility of parole sentence to a defendant who had a mental disorder. He stated several times he could fairly consider all three possible sentences, including life with the possibility of parole, and could vote for life with the possibility of parole for someone convicted of malice murder. We conclude that the trial court did not abuse its discretion by finding Mr. Burke qualified to serve on the jury. See id.

8. During the sentencing trial, the State tendered certified copies of Nance's convictions for the two bank robberies in federal court. Nance objected on the ground that the certified copies of the convictions included his sentences on those convictions. The trial court overruled the objection and we find no error. When a certified copy of a prior conviction is admitted in a capital sentencing trial, the sentence received by the defendant is admissible as part of the conviction. See *Davis v. State*, 241 Ga. 376, 383 (6) (247 SE2d 45) (1978). Nance's objection at trial to the admission of the sentences in the certified copies of his Kansas convictions for armed robbery, burglary, and theft was without merit for the same reason. Id.

9. Nance claims on appeal that the trial court erred by admitting into evidence portions of Nance's prison records containing hearsay and statements by Nance regarding disciplinary infractions. However, Nance's counsel stated at trial he had no objection to the

admission of these documents, thus waiving any claim of error on appeal. See *Earnest v. State*, supra, 262 Ga. 494 (1).

10. Nance claims the trial court in the 2002 sentencing trial should have charged the jury on similar transactions because the evidence of his September 1993 bank robbery was admitted as a similar transaction at his 1997 murder trial. This claim is without merit; no such limiting instruction was required because evidence of Nance's first bank robbery was admitted as aggravating evidence at his 2002 sentencing trial, not as a similar transaction.

11. Appellant contends the trial court erred when it imposed two death sentences on appellant, one for felony murder and one for malice murder, pursuant to the jury's recommendation. We noted in appellant's first appeal that the felony murder conviction was vacated by operation of law because the victim was the same for Nance's malice murder and felony murder convictions. *Nance v. State*, supra, 272 Ga. 217, n. 1. For reasons unknown to this Court, the vacated felony murder conviction as well as the malice murder conviction were submitted to the jury upon remand of the case for retrial of the penalty phase. Accordingly, the sentence imposed on the vacated conviction is hereby vacated.

12. OCGA § 17-10-30 is not unconstitutional. *Morrow v. State*, 272 Ga. 691 (15) (532 SE2d 78) (2000).

13. Nance's death sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. OCGA § 17-10-35 (c) (1). Although Nance claims there have been several similar cases in Gwinnett County where the defendant did not receive a death sentence, this Court's review "concerns whether the death penalty 'is excessive per se' or if the death penalty is 'only rarely imposed . . . or substantially out of line' for the type of crime involved and not whether there *ever* have been sentences less than death imposed for similar crimes." (Emphasis in original.) *Gissendaner v. State*, 272 Ga. 704, 718 (19) (a) (532 SE2d 677) (2000). Nance's death sentence is not excessive or disproportionate to the penalty imposed in similar cases, considering both the crimes and the defendant. OCGA § 17-10-35 (c) (3). The evidence showed that, before he murdered Gabor Balogh, Nance had robbed two banks during which he threatened to kill bank employees if they interfered, and he had convictions in Kansas for armed robbery, burglary, and theft. While fleeing the second bank robbery, Nance shot and killed Mr. Balogh at close range while trying to take his car as a getaway car, and he shot at another man for the same reason. The similar cases listed in the Appendix support the imposition of the death penalty in this case, in that they involve a murder committed during an armed robbery or a murder committed by someone with a previous conviction for a capital felony.

*Judgment affirmed in part and vacated in part. All the Justices concur.*

APPENDIX.

*Perkinson v. State*, 279 Ga. 232 (610 SE2d 533) (2005); *Raheem v. State*, 275 Ga. 87 (560 SE2d 680) (2002); *Butts v. State*, 273 Ga. 760 (546 SE2d 472) (2001); *King v. State*, 273 Ga. 258 (539 SE2d 783) (2000); *Jones v. State*, 273 Ga. 231 (539 SE2d 154) (2000); *Wilson v. State*, 271 Ga. 811 (525 SE2d 339) (1999); *Lee v. State*, 270 Ga. 798 (514 SE2d 1) (1999); *Cromartie v. State*, 270 Ga. 780 (514 SE2d 205) (1999); *Whatley v. State*, 270 Ga. 296 (509 SE2d 45) (1998); *Jones v. State*, 267 Ga. 592 (481 SE2d 821) (1997); *Carr v. State*, 267 Ga. 547 (480 SE2d 583) (1997); *McClain v. State*, 267 Ga. 378 (477 SE2d 814) (1996); *Greene v. State*, 266 Ga. 439 (469 SE2d 129) (1996); *Mobley v. State*, 265 Ga. 292 (455 SE2d 61) (1995); *Burgess v. State*, 264 Ga. 777 (450 SE2d 680) (1994); *Potts v. State*, 259 Ga. 96 (376 SE2d 851) (1989); *Moon v. State*, 258 Ga. 748 (375 SE2d 442) (1988); *Ford v. State*, 257 Ga. 461 (360 SE2d 258) (1987).

DECIDED DECEMBER 1, 2005 —
RECONSIDERATION DENIED JANUARY 17, 2006.

*Edwin J. Nelson, Sharon L. Hopkins, Johnny R. Moore*, for appellant.
*Daniel J. Porter, District Attorney, Phil Wiley, Assistant District Attorney, Thurbert E. Baker, Attorney General, Christopher D. Helms, Assistant Attorney General*, for appellee.