S97A0646. BROWN v. THE STATE.
S97A0647. JAMESWHITE v. THE STATE.
(490 SE2d 75)

HINES, Justice.

Devon Brown and Richard Jameswhite were tried together for the murder of Anthony Maclin.[1] The evidence viewed in favor of the verdicts showed that Brown and Jameswhite were involved in a minor car collision with Maclin and his fiancee in the parking lot of a restaurant. Brown, Jameswhite, and Maclin argued over the extent of damage to the vehicles. Because Brown and Jameswhite were fugitives from another state, Brown repeatedly asked Maclin and his fiancee not to call the police and promised that he and Jameswhite would pay for the damage. Jameswhite left the scene for a period of

---

[1] The crime was committed on April 28, 1994. On June 23, 1994, Brown and Jameswhite were indicted for malice murder and felony murder; Jameswhite was also indicted for giving a false name to a law enforcement officer. They were tried before a jury on December 5-12, 1994, and both were found guilty of malice murder and felony murder; the court directed a verdict of acquittal on Jameswhite's charge of giving a false name to a law enforcement officer. Both defendants were sentenced to life imprisonment for malice murder on December 12, 1994. The felony murder convictions stood vacated by operation of law, OCGA § 16-1-7. Brown's motion for new trial was filed January 9, 1994, and denied on December 5, 1996. Jameswhite's motion for new trial was filed January 11, 1994, and denied on December 5, 1996. Brown's notice of appeal was filed on December 23, 1996, the appeal was docketed in this Court on January 16, 1997, and submitted for decision without oral argument on March 10, 1997. Jameswhite's notice of appeal was filed on December 27, 1996, the appeal was docketed with this Court on January 16, 1997, and orally argued April 21, 1997.

time to try to find sufficient funds to satisfy Maclin and his fiancee. Maclin's fiancee tried on one occasion to leave the scene and call police but Maclin summoned her back. While she was momentarily turned away from the men, she heard a popping sound and turned to see Jameswhite holding Maclin from the side and Brown pointing a pistol at Maclin. Brown then got into his car, Maclin fell, and Jameswhite shot Maclin. Maclin's fiancee hid behind a car, Jameswhite got into the car with Brown, and the two men fled. Maclin later died of his wounds.

Police chased the two men to a nearby apartment complex where Jameswhite was apprehended and the police recovered two firearms he was carrying. Brown eluded police by removing his shirt and cap and posing as a resident on an apartment balcony. He was arrested the next day following the fiancee's photo identification of him as one of the men who shot Maclin. Police officer Gaddis also identified Brown as being at the apartment complex during the chase, noting a prominent scar on Brown's abdomen. Bullets and shell casings found at the scene of the crime were identified as fired from one of the guns Jameswhite was carrying when he was apprehended.

1. Brown argues the evidence was insufficient to prove he committed the murder, arguing only that it did not establish his guilt beyond a reasonable doubt. At trial he urged that the evidence did not sufficiently identify him as one of the shooters, but an eyewitness so identified him. This, along with the remainder of the State's evidence, authorized the jury to find him guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Jameswhite also challenges the sufficiency of the evidence, arguing that ballistics evidence and inconsistencies in testimony showed that only Brown shot Maclin. Any inconsistency in the evidence was for the jury's resolution. *Clifford v. State*, 266 Ga. 620, 621 (1) (469 SE2d 155) (1996). The eyewitness testimony, together with the ballistics evidence connecting the handgun Jameswhite was carrying to the murder, authorized the jury to find him guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia*, supra.

2. Both men unsuccessfully moved to sever their trials. When the State does not seek the death penalty for a capital felony, whether to try defendants jointly or separately is in the discretion of the trial court. OCGA § 17-8-4. The defendant requesting severance must make a clear showing of prejudice and a consequent denial of due process. The trial court is to consider whether: 1) a joint trial will create confusion of the evidence and law; 2) there is a danger that evidence implicating one defendant will be considered against the other even if cautionary instructions are given; and 3) the co-defendants will assert antagonistic defenses. *Dennard v. State*, 263 Ga. 453, 455

(5) (435 SE2d 26) (1993).

Both men argue the defenses were antagonistic. Even if this is so, theoretically antagonistic defenses without harm do not warrant reversal. *Davis v. State*, 266 Ga. 801, 802 (3) (471 SE2d 191) (1996). Neither man testified and the State did not introduce a statement of either defendant. Although Jameswhite's cross-examination of Maclin's fiancee attempted to show that only Brown shot Maclin, she did not so testify, merely repeating that when she first turned around Brown held a gun but not Jameswhite. This was cumulative of her direct testimony and created no prejudice. Further, there was sufficient evidence to convict each man as a party to the crime even if only one had actually shot Maclin. See *Linares v. State*, 266 Ga. 812, 815 (4) (471 SE2d 208) (1996).

Nor is there merit to Jameswhite's claim that there was a danger that evidence admitted for use against Brown would be used against him, specifically Brown's flight and the fact that firearms and money were found on Brown's person and at his residence after Jameswhite's arrest. The court gave sufficient cautionary instructions as to these matters, which in any event clearly pertained only to Brown.

3. Jameswhite challenges the court's refusal to strike for cause certain potential jurors. During general voir dire, four jurors expressed that they would give more credibility to the testimony of a police officer than to the testimony of another witness and Jameswhite moved that three of them be excused for cause. Whether to strike a juror for cause lies within the sound discretion of the trial court, *Garland v. State*, 263 Ga. 495, 496 (1) (435 SE2d 431) (1993), and the fact that a juror has expressed a belief in the credibility of a witness does not require that he be excused for cause. *Foster v. State*, 248 Ga. 409, 411 (3) (283 SE2d 873) (1981). See also *Taylor v. State*, 243 Ga. 222, 224 (2) (253 SE2d 191) (1979). The jurors in question testified they could put aside any biases or prejudices and decide the case based upon the evidence, see *Johnson v. State*, 262 Ga. 652, 653 (2) (424 SE2d 271) (1993), and the court did not abuse its discretion in denying the motion to strike them for cause.

Jameswhite also moved to strike for cause three potential jurors who acknowledged they had been exposed to media accounts of the beginning of the trial. One had seen television news the previous night, one had heard radio news that morning, and one had seen Jameswhite's picture in the newspaper that morning. But, before a potential juror can be disqualified for cause, it must be shown that the juror holds an opinion "so fixed and definite" that the juror is unable to set it aside and decide the case based on the evidence and the court's charge on the evidence and law. *Garland*, supra. The jurors had only brief exposure to news accounts and all testified they had formed no opinion because of the media accounts and could put

aside any information thus gained and decide the case based on the evidence and the court's instructions. There is no basis to conclude the court abused its discretion in refusing to strike these jurors for cause.

4. Brown contends his motion for new trial should have been granted because trial counsel was ineffective in failing to introduce exculpatory scientific evidence, failing to enforce the scope of a stipulation regarding scientific evidence, and inadequately cross-examining Officer Gaddis. In order to prevail on a claim of ineffective assistance of counsel he must show that his counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985) (citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)). To meet the first prong of this test, a defendant must overcome the " 'strong presumption' " that counsel's performance fell within a "wide range of reasonable professional conduct" and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case. Id. at 784. The second prong requires the defendant to show there is a reasonable probability that, absent counsel's unprofessional errors, the result of the trial would have been different. Id. at 783.

The trial court ruled that Brown had not overcome the presumption of the reasonableness of counsel's actions nor shown there was a reasonable probability the result of the trial would have been different if counsel's decisions had been otherwise.

(a) Brown claims counsel should have introduced evidence concerning the shirt and hat found on the apartment balcony where Gaddis encountered Brown, specifically that no blood was found on the shirt despite the close range of the shooting and that the single hair that was found in the cap and was suitable for analysis did not match hair taken from his head. He also contends counsel should have introduced the fact that his fingerprints were not found in the car. Counsel testified at the hearing on the motion for new trial that she did not present this evidence because the State could easily show on cross-examination that the absence of fingerprints, blood, and matching hair did not rule out the possibility that Brown was nonetheless at the murder scene. Moreover, the evidence's value did not outweigh the benefit of having first and last closing argument, which would be lost if she presented evidence. See OCGA § 17-8-71. Preserving such argument is a decision involving trial strategy. See *Boone v. State*, 224 Ga. App. 563 (1) (481 SE2d 569) (1997); *Maner v. State*, 221 Ga. App. 826, 827 (1) (b) (472 SE2d 716) (1996); *Avans v. State*, 207 Ga. App. 329, 330 (2) (427 SE2d 826) (1993). Further,

counsel emphasized in closing that the State presented no scientific evidence about Brown's shirt and hat, nor fingerprint evidence linking Brown to the car, although fingerprints had been lifted. "The fact that appellant and his present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that appellant received representation amounting to ineffective assistance of counsel. [Cit.]" *Stewart v. State*, 263 Ga. 843, 847 (6) (440 SE2d 452) (1994).

(b) Brown argues that counsel was ineffective because she failed to enforce a stipulation regarding the admissibility of the results of certain scientific tests. Brown's counsel informed the court she had not received a copy of the report on the blood and hair analyses. The State noted the reports often were delayed in preparation and stipulated to the admissibility of the results of the tests. Later, when a written report had been prepared and provided to Brown, the State affirmed its intention to stipulate to the contents of what a written report would contain and allow Brown to call a witness to testify as to what those contents would be. Brown urges that if counsel had held the State to its stipulation, Brown might have received a ruling that the State had stipulated to the *admission* of the report and been able to both introduce the written report and preserve first and last argument.

The State's stipulation to the admissibility of the results of the scientific tests did not contemplate admission of the later documentation of those results. No written report was mentioned and the parties then thought no report would be prepared in time for trial. Counsel was not ineffective in failing to ask the court to rule that the State had made a broader stipulation than it actually had.

(c) Brown also contends counsel should have asked Gaddis whether he could make an in-court identification of him. However, there is no evidence that Gaddis would have testified he could not identify Brown in court and no prejudice has been shown by counsel's failure to ask the question.

During a hearing on the admissibility of Gaddis' prior identification of Brown's photograph, Gaddis identified Brown's photograph as the one he had earlier chosen from an array. The State asked whether he recognized anyone in court and Gaddis responded by gesturing and saying "This subject over here." Before further identification was made, Brown objected that Gaddis looked at the photograph before answering the question, and the State declared it waived any in-court identification. Gaddis did not identify Brown to the jury. Brown relies upon this exchange for the conclusion that Gaddis could not identify him in court. However, the exchange equally supports the conclusion that Gaddis would have so identified Brown. Thus, it cannot be shown that counsel was ineffective in failing to ask Gaddis

to identify Brown before the jury.

5. On the Thursday before trial, Jameswhite learned that a scientific test had recently been performed on the shirt worn by Maclin and showed that one of the gunshots came from a distance of six to twelve inches and another while the gun barrel was in contact with the shirt. At trial he objected, contending OCGA § 17-16-23 (b) (former OCGA § 17-7-211 (b)) had been violated because the test was not mentioned in the scientific reports he had received, the test had been performed less than ten days prior to trial, and he had not been supplied with a copy of any report.

Jameswhite did not request a continuance or recess on this ground. Moreover, it is undisputed that the test results were not reduced to writing and the medical examiner gave only oral testimony about the results. OCGA § 17-16-23 (b) pertains only to written scientific reports. *Law v. State*, 251 Ga. 525, 528 (2) (307 SE2d 904) (1983). See also *Rower v. State*, 264 Ga. 323 (5) (443 SE2d 839) (1994); *Hair v. State*, 262 Ga. 284 (2) (417 SE2d 657) (1992). As no written report of this test was made, OCGA § 17-16-23 (b) was not implicated and it was not error to allow testimony about the forensic examination.

6. Brown and Jameswhite challenge the admission of evidence that they were fugitives from another jurisdiction. The information that each man was wanted by police in another state was stipulated before the jury to show their motive for killing the victim instead of awaiting a police investigation into the accident. The jury was not told what the charges were in the foreign jurisdiction, nor that bulletins identified the men as traveling together. The fugitive information was central to motive and it is not grounds for reversal that this relevant information may have incidentally placed their characters in issue. *Sterling v. State*, 267 Ga. 209, 211 (4) (477 SE2d 807) (1996). The fact that only Brown and not Jameswhite stated at the scene of the accident that he did not want police involved does not preclude Jameswhite's sharing the motive of avoiding interaction with police in order to avoid detection. In fact, such motive is shown by Jameswhite's leaving the scene to try to secure funds sufficient to satisfy Maclin and his fiancee and prevent them from calling the police.

7. On the second day of trial, Jameswhite was fitted with a security device which could not be seen and which was capable of administering an electric shock. He likens such a device to the use of shackles and contends the court abused its discretion in allowing it. The court stated it deferred to the sheriff in such security matters and noted that the device was not visible. Even accepting the analogy to shackling, it is prejudicial to a defendant only when visible to the jury. See *Rhodes v. State*, 264 Ga. 123 (2) (441 SE2d 748) (1994); *Cotton v. State*, 223 Ga. App. 288, 290 (4) (477 SE2d 425) (1996). There is noth-

ing in the record to support Jameswhite's contention that the device nonetheless had a detrimental psychological effect on his ability to participate in the trial. Although the court did not make extensive inquiry into the need for the device, Jameswhite fails to show how he was harmed by this security measure.

8. During closing argument, Jameswhite's counsel read to the jury a recently prepared transcript of a series of questions and answers that had been posed to a witness earlier in the trial. Counsel then departed from the transcript and commented on the witness' testimony. The State objected that counsel made it appear that his comments were actually a recitation of the testimony. The court charged the jurors that it was their responsibility to remember the evidence and ruled that counsel could not read from the transcript but could remind the jury of the evidence in any other manner counsel chose. Jameswhite contends this was reversible error.

Counsel is permitted wide latitude in closing argument, and any limitation of argument is a matter for the court's discretion. *Morgan v. State*, 267 Ga. 203, 203-204 (1) (476 SE2d 747) (1996). In general, there is no prohibition on counsel reading from a transcript of trial testimony during closing argument. In fact, counsel in closing may even properly replay a portion of a videotape admitted into evidence as it is simply the verbatim repetition of testimony already in evidence, *Hodges v. State*, 194 Ga. App. 837, 838 (3) (392 SE2d 262) (1990). " 'Since counsel in argument clearly have the right to comment on the evidence, it is not improper for them to repeat what testimony was . . . .' [Cit.]" Id.

In ruling on the State's objection, the court imposed a blanket prohibition on reading from the transcript rather than merely admonishing counsel to use the transcript in a way that allowed no confusion between testimony and comment. Regardless of whether this ruling was error, Jameswhite has not shown any harm. Counsel was permitted to repeat the witness' testimony without using the transcript and was able to argue the conclusions to be drawn.

*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 15, 1997.

M. Muffy Blue, for appellant (case no. S97A0646).

*Bruce S. Harvey, William S. Callahan,* for appellant (case no. S97A0647).

*J. Tom Morgan III, District Attorney, Robert M. Coker, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K.*

*Smith, Senior Assistant Attorney General, H. Maddox Kilgore, Assistant Attorney General,* for appellee.