## A09A1418. BRASHIER v. THE STATE.

(681 SE2d 750)

BLACKBURN, Presiding Judge.

Following a jury trial, Dennis Blair Brashier was convicted of one count of kidnapping with bodily injury[1] and one count of theft by taking.[2] He appeals his kidnapping with bodily injury conviction and the denial of his motion for new trial, challenging the sufficiency of the evidence in support of the element of asportation and arguing that he was denied a fair trial by being forced to wear an electronic security device during the trial. For the reasons set forth below, we affirm.

" 'On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict, and [Brashier] no longer enjoys a presumption of innocence.' " *Dennis v. State.*[3] In evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia.*[4]

So viewed, the evidence shows that at around 11:30 a.m. on December 26, 2006, Brashier and a 19-year-old female entered the basement of Brashier and his grandmother's residence. Brashier and the female were acquaintances and were returning to Brashier's residence after completing an illegal drug purchase. Once in the basement, Brashier came behind the female, locked the door, and then put something over her mouth, saying "I got you now." He took the victim to a corner of the basement where there was an afghan blanket and allegedly raped her. Later, fearing that the victim was going to inform the police about his illegal drug purchases, Brashier moved the victim from the afghan blanket to a pole, which was approximately 30 steps away, and tied her against the pole with duct tape. After some time, Brashier returned to the basement, untied one of the victim's legs, and retied it to nearby shelves. At that point, he again allegedly raped her.

At some point later in the day, Brashier untied the victim from the pole, forced her onto the ground, and tied her feet together. Brashier then tied the victim's hands to her feet, picked her up, and carried her to the front of the basement into a corner. There, he put something under her head and covered her with a blanket. He

---

[1] OCGA § 16-5-40.

[2] OCGA § 16-8-2.

[3] *Dennis v. State*, 294 Ga. App. 171, 171 (669 SE2d 187) (2008) (quoting *Berry v. State*, 274 Ga. App. 831, 831 (1) (619 SE2d 339) (2005)).

[4] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

covered her mouth, nose, and ears with duct tape. After leaving the victim in the basement, Brashier took her vehicle and fled the state. A short time later, Brashier's grandmother went into the basement and found the victim still tied and barely able to breathe on account of the duct tape Brashier had put over her mouth and nose.

On February 9, 2007, Brashier was indicted on one count of rape, two counts of aggravated sodomy, one count of kidnapping with bodily injury, and one count of theft by taking. Following a jury trial, Brashier was found guilty of kidnapping with bodily injury and theft by taking but was acquitted of rape and the two counts of aggravated sodomy. Brashier then filed a motion for new trial, disputing the sufficiency of the evidence among other things. The trial court denied his motion for new trial, and this appeal followed.

1. Brashier contends that the trial court erred by requiring him to be fitted with a security device known as a "RACC belt" on his leg during trial, arguing that such measures denied him the right to a fair trial. We disagree.

> Although it is well settled that a defendant is entitled to a trial free of partiality which the presence of excessive security measures may create, it is also as well established that the use of extraordinary security measures to prevent dangerous or disruptive behavior which threatens the conduct of a fair and safe trial is within the discretion of the trial court.

*Young v. State.*[5] Use of a restrictive security device is only prejudicial when visible to the jury. *Brown v. State.*[6] In addition, the Supreme Court of Georgia has held that the use of a remedial security measure shielded from the jury's view is permissible where the defendant fails to show he was harmed by its use. *Young,* supra, 269 Ga. at 479 (2). To demonstrate error, the defendant must show that the security measure utilized was "so inherently prejudicial as to pose an unacceptable threat to his right to a fair trial." (Punctuation omitted.) Id.

In its order denying Brashier's motion for new trial, the trial court cited several reasons for its requiring the device: (1) Brashier had previously pled guilty to a felony escape; (2) Brashier had been convicted of a felony for an assault on an officer; (3) Brashier had made numerous complaints about the problems he had with jail personnel during the pendency of the case; (4) Brashier had fled to Mississippi after committing the alleged crimes; (5) Brashier had

---

[5] *Young v. State*, 269 Ga. 478, 479 (2) (499 SE2d 60) (1998).
[6] *Brown v. State*, 268 Ga. 354, 359 (7) (490 SE2d 75) (1997).

attempted to file pleadings on toilet paper which indicated a disrespect for the court; (6) Brashier had received a maximum security classification as an inmate at the Douglas County jail; (7) Brashier was visibly hostile to the court and the public defenders appointed to represent him; and (8) an inherent security problem was created by the fact that Brashier was representing himself at trial and thus had to be free to move about the courtroom. Accordingly, the trial court did not abuse its discretion in requiring Brashier to wear the RACC device. See *Hicks v. State*;[7] *Culbertson v. State*.[8]

Furthermore, there was no indication that the jury was in any way affected by the utilization of this device or that they even knew that he was wearing such a device until Brashier testified to that fact at trial. The RACC belt was completely covered by Brashier's pant leg, and Brashier provided no evidence that the jury was initially aware of it. Obviously, the jury was made aware of the device when Brashier testified at trial to the fact that he was wearing it. However, "a party cannot complain about errors he helped induce." (Punctuation omitted.) *Lampley v. State*.[9] Indeed, it is well established that "[i]nduced error is not grounds for reversal." *Jackson v. State*.[10]

2. Brashier contends that the evidence was insufficient to prove that he was guilty beyond a reasonable doubt of kidnapping with bodily injury. Specifically, he argues that his movement of the victim was insufficient to prove the element of asportation. We disagree.

"A person commits the offense of kidnapping when such person abducts or steals away any person without lawful authority or warrant and holds such other person against his will." OCGA § 16-5-40 (a).[11] For the State to prove the essential element that the defendant has "stolen away" or "abducted" his alleged victim, it must show that an unlawful movement, or asportation, of the person has taken place against his will. *Gibson v. State*.[12]

In *Garza v. State*,[13] the Supreme Court of Georgia adopted a test established in *Govt. of Virgin Islands v. Berry*[14] to determine whether

---

[7] *Hicks v. State*, 256 Ga. 715, 719 (9) (352 SE2d 762) (1987).

[8] *Culbertson v. State*, 198 Ga. App. 513, 513 (2) (402 SE2d 111) (1991).

[9] *Lampley v. State*, 284 Ga. 37, 40 (4) (663 SE2d 184) (2008).

[10] *Jackson v. State*, 281 Ga. App. 83, 87 (3) (635 SE2d 372) (2006).

[11] OCGA § 16-5-40 (d) (4) states that "[a] person convicted of the offense of kidnapping shall be punished by . . . [l]ife imprisonment or death if the person kidnapped received bodily injury." Brashier does not challenge that there was bodily injury, and, regardless, evidence showed that the victim was injured.

[12] *Gibson v. State*, 233 Ga. App. 838, 841 (4) (a) (505 SE2d 63) (1998).

[13] *Garza v. State*, 284 Ga. 696, 701-702 (1) (670 SE2d 73) (2008).

[14] *Govt. of Virgin Islands v. Berry*, 604 F2d 221, 227 (IV) (3rd Cir. 1979), superseded in part by statute, *Martinez v. Govt. of the Virgin Islands*, 2008 U. S. Dist. LEXIS 107613, *8-9 (D. V.I. 2008).

the movement at issue constituted asportation and therefore fulfilled that element of the crime of kidnapping. The *Berry* test assessed four factors in determining whether the movement at issue constituted asportation:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

*Garza*, supra, 284 Ga. at 702 (1). *Garza* reasoned that

> [a]ssessment of these factors will assist Georgia prosecutors and courts alike in determining whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely a "criminologically insignificant circumstance" attendant to some other crime.

Id. Not all elements under the *Berry* test must favor the prosecution for there to be asportation. See *Henderson v. State*[15] (sufficient evidence supporting asportation despite only minimal movement of victims).

Applying the *Berry* test in this matter confirms that the evidence showed that Brashier's movement of the victim following the second alleged rape constituted asportation beyond a reasonable doubt. Although the duration of the movement was minimal, in that it consisted of the victim being carried from a pole in the middle of the basement to a corner at the front of the basement, not all elements under the *Berry* test must favor the prosecution for there to be asportation. *Henderson*, supra, 285 Ga. at 245 (5). Importantly, the movement did not take place during the commission of another crime as the alleged rape had already been completed,[16] and as such was unrelated to Brashier's subsequent stealing of the victim's car. Given that no other offense was taking place at the time of the movement, the movement could not have been an inherent part of a separate offense. Finally, the movement itself created an additional

---

[15] *Henderson v. State*, 285 Ga. 240, 245 (5) (675 SE2d 28) (2009).

[16] It is arguable that the alleged rape and aggravated sodomy should not be considered separate offenses in the first place due to the jury's acquittal of these charges. However, it is not necessary to ignore them to reach the judgment in this case.

danger to the victim independent of any alleged sexual assault or theft. In fact, the movement served to conceal the victim and diminish her opportunity to be rescued. The corner to which the victim was moved would have made it more difficult to be heard by Brashier's grandmother who was in the residence, which increased the chance that the victim could have died from suffocation as a result of the tape on her nose and mouth. Indeed, during his testimony, Brashier admitted that he did not want his grandmother to find the victim. Brashier's acts of covering the victim with the afghan blanket and taping up her mouth further demonstrated his intent to conceal the victim and to decrease the opportunity for rescue.

The facts at issue here are similar to those recently addressed by the Supreme Court of Georgia in *Henderson* with regard to application of the *Berry* test. In *Henderson*, the defendants ordered the victims to empty their pockets and then coerced the victims into another room at gunpoint. Supra, 285 Ga. at 241 (1). Our Supreme Court determined that the movement was not part of the robbery, which had already occurred, but that it did create "an additional danger to the victims by enhancing the control of the gunmen over them." Id. at 245 (5). Similarly, here the alleged rapes had already occurred before Brashier tied and moved the victim to the front corner of the basement. As in *Henderson*, the duration of Brashier's movement of the victim here was minimal, but also was not an inherent part of a separate offense or even during a separate offense. Furthermore, as in *Henderson*, Brashier's movement of the victim to attempt to conceal her subjected the victim to additional danger independent of any other alleged offense.

Brashier's argument that the facts in this matter relating to asportation are similar to those in *Garza* is unpersuasive. In *Garza*, there had been an ongoing false imprisonment of one of the victims. Supra, 284 Ga. at 696-697. It was not until the police arrived, who knew that this victim was being held against his will inside the house, that the defendant then moved the victim. Id. at 704 (3). The Supreme Court therefore concluded that the movements "occurred as minor incidents in the course of [the defendant's] false imprisonment of [the victim]." Id. The rationale for this conclusion was that

> [t]here was no evidence that the movements served to conceal [the victim] from police, who were already aware he was being detained, to thwart in any appreciable way the efforts of the police to free [the victim], or to enhance significantly the risk [the victim] already faced as the victim of false imprisonment.

Id. Here, there was sufficient evidence for the jury to conclude that Brashier's movement of the victim after the alleged rapes served to both conceal her and to significantly enhance the risk that she faced. See *Henderson*, supra, 285 Ga. at 245 (5). The movement here "is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue." *Garza*, supra, 284 Ga. at 702 (1). Accordingly, the evidence was sufficient to support Brashier's conviction of kidnapping with bodily injury beyond a reasonable doubt.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED JULY 14, 2009.

*Drummond & Swindle, Jason W. Swindle*, for appellant.
*David McDade, District Attorney, James A. Dooley, Assistant District Attorney*, for appellee.