## FIRST DIVISION
## ELLINGTON, C. J.,
## PHIPPS, P. J., and DILLARD, J.

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)** **http://www.gaappeals.us/rules/**

**July 27, 2012**

# In the Court of Appeals of Georgia

A12A1464. DAY v. THE STATE.                                    JE-056C

ELLINGTON, Chief Judge.

A Hall County jury found Hardy Joe Day guilty beyond a reasonable doubt of kidnapping, OCGA § 16-5-40 (a); false imprisonment, OCGA § 16-5-41 (a); and aggravated battery, OCGA § 16-5-24 (a). He appeals from the denial of his motion for new trial,[1] contending that the State failed to present sufficient evidence to prove that venue was proper in Hall County. He also argues that his kidnapping conviction must be reversed due to the State's alleged failure to prove the essential element of asportation. Finding no error, we affirm.

When reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant

---

[1] The trial court granted Day's February 2012 motion for an out-of-time appeal.

no longer enjoys the presumption of innocence. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). This standard also applies to our review of the denial of a motion for a directed verdict. *Hash v. State*, 248 Ga. App. 456, 457 (1) (546 SE2d 833) (2001).

Viewed in this light, the record shows the following relevant facts. On July 13, 2007, Day picked up a woman whom he had known for about two months ("the victim") from the Franklin County Jail. Day owed her $700 to $750 for repair work, and she needed the money to pay her probation fees. After failing to retrieve the money from his cousin's house in Danielsville, Day drove the victim to a house in Hall County. Day entered the house, and the victim waited in the vehicle for about two hours before knocking on the door and asking to use the restroom. When she exited the restroom, she walked into a room full of people who invited her to use what she believed to be methamphetamine, which was lying on a table. After being heckled for her trepidation, she relented and ingested some of the drug. When the people in the

house suggested that she have sex with some of them, she and Day left the house and drove away in his vehicle.

As Day started driving down Swansee Road in Hall County, he began swearing at the victim, telling her that the reason he took her to the house was to have sex. Shortly after leaving the house, Day repeatedly hit her in the face, then stopped his vehicle, dragged the victim onto the road, and continued beating and threatening to kill her. The victim tried to call 911 on her cell phone, but no one came to assist her. After dragging her back into his vehicle, Day wielded a knife, pressing it against the victim hard enough to cut her skin. The victim was able to take the knife and throw it out the vehicle's window. The victim begged Day to let her go, but he continued to restrain and threaten her. In fear for her life, she jumped from the vehicle, but Day again dragged her back into the vehicle. Day told the victim that his vehicle was running out of gas and that if it did, he was going to kill her. She suggested that they stop somewhere to get gas, hoping that she would be able to scream or draw some attention and assistance. Day refused, afraid that someone might see her. While continuing to threaten and beat the victim, Day turned onto Interstate 85 and drove into Jackson County, where his vehicle ran out of gas.

Day pulled the victim into the woods and laid down. When the victim felt him loosen his grip on her, she ran, jumping over the median and crossing the interstate. Fearing that Day might chase her and that her white clothing was too visible, she removed her pants and shirt and threw them into the woods. She attempted to wave down passing motorists and eventually caught the attention of a trucker, who stopped to help her.

The victim asked the trucker to drive her away from the scene. The trucker, however, kept the victim at the scene, providing the cab of his truck as protection while he called 911. He described the victim as "hysterical," "terribly scared," and beaten up. Law enforcement officers arriving on the scene found Day's vehicle nearby and recognized blood splatter inside. Though Day was not found at that time, two Hall County Sheriff's deputies returned to the scene to retrieve the victim's clothing shortly thereafter and found him walking along I-85. He had no injuries, but had blood on his shirt, pants, and hands. DNA tests confirmed that the blood on his shirt and pants matched that of the victim.

1. Day argues that the evidence was insufficient to support his conviction for kidnapping because the State failed to prove beyond a reasonable doubt that the kidnapping occurred within Hall County. "[V]enue must be proved beyond a

4

reasonable doubt when a defendant pleads not guilty and is put on trial." (Citation omitted.) *Grier v. State*, 275 Ga. 430, 431 (1) (569 SE2d 837) (2002). At the time this incident occurred, kidnapping was not a continuous offense and was consummated in the county where the victim was seized and asported to some degree.[2] *Martin v. State*, 281 Ga. App. 64, 65-66 (1) (635 SE2d 358) (2006).

In this case, the State presented evidence sufficient for a reasonable trier of fact to find that the kidnapping occurred in Hall County beyond a reasonable doubt. Both the victim and Day testified that the house where the victim used the restroom and ingested drugs is in Hall County. Further, a Hall County police officer testified that, upon her release from the hospital, the victim was able to lead the officer down the road on which Day first assaulted and dragged her back into his vehicle. The officer highlighted the road for the jury on a map of Hall and other surrounding counties. He concluded his testimony by stating his determination that Day had initially assaulted the victim and then dragged her back into his vehicle while they were in Hall County. Thus, we conclude that the State's evidence was sufficient to show that Day seized the

---

[2] The General Assembly amended OCGA § 16-5-40 to include the following provision: "(f) The offense of kidnapping is declared to be a continuous offense, and venue may be in any county where the accused exercises dominion or control over the person of another." See Ga. L. 2009, p. 88, § 1.

victim, held her against her will, and transported her in his vehicle while in Hall County and, therefore, to prove venue for the kidnapping charge beyond a reasonable doubt.

2. Day also contends that the State failed to prove the essential element of asportation, and, therefore, that the trial court erred in denying his motion for a directed verdict of acquittal on the kidnapping charge. We disagree. Under former OCGA § 16-5-40 (a), "[a] person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will."[3] The element of "abducting or stealing away" the victim is known in legal parlance as "asportation." (Citation and punctuation omitted.) *Garza v. State*, 284 Ga. 696, 697 (1) (670 SE2d 73) (2008). The Supreme Court of Georgia has adopted a four-part test for determining

> whether the movement at issue constitutes asportation: (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

---

[3] The General Assembly amended the statute in 2009. See Ga. L. 2009, p. 88, § 1.

6

(Citation and footnote omitted.) Id. at 702 (1).[4] Not all elements under this test must favor the prosecution for asportation to be established. *Brashier v. State*, 299 Ga. App. 107, 110 (2) (681 SE2d 750) (2009). This Court's focus in considering these factors will be on whether the movement in this case is "movement serving to substantially isolate the victim from protection or rescue – or merely a criminologically insignificant circumstance attendant to some other crime." (Citation and punctuation omitted.) *Garza v. State*, 284 Ga. at 702 (1).

---

[4] The General Assembly superseded *Garza* in 2009, when it amended OCGA § 16-5-40 by adding the following provision:

(b) (1) For the offense of kidnapping to occur, slight movement shall be sufficient; provided, however, that any such slight movement of another person which occurs while in the commission of any other offense shall not constitute the offense of kidnapping if such movement is merely incidental to such other offense.

(2) Movement shall not be considered merely incidental to another offense if it: (A) Conceals or isolates the victim; (B) Makes the commission of the other offense substantially easier; (C) Lessens the risk of detection; or (D) Is for the purpose of avoiding apprehension.

See Ga. L. 2009, p. 88, § 1.

7

In this case, the State's evidence established the element of asportation by showing that, while the victim willingly entered Day's vehicle and left the house with him, she demonstrated her desire to escape from Day by jumping from his vehicle and trying to call 911 for help. Day, in turn, moved the victim against her will by dragging her back into his vehicle and continuing to drive. This Court has held that the fact that a victim enters a vehicle voluntarily, standing alone, does not protect an assailant from being charged with kidnapping if he later refuses to allow the victim to leave. *Clark v. State*, 282 Ga. App. 248, 251-252 (1) (c) (638 SE2d 397) (2006).

Additionally, while dragging the victim back into the vehicle may have given Day the opportunity to continue the offense of aggravated battery, Day's act of transporting the victim down Swansee Road in that vehicle was not a necessary or inherent part of that offense. Indeed, Day had already completed the offenses of battery and false imprisonment when he dragged the victim back into the vehicle – before he drove away. Thus, the movement of the victim down the road was inherent only to the offense of kidnapping. That movement also presented a significant danger to the victim independent of the danger posed by any separate offense by isolating her and making her rescue more difficult than if she had been left standing on the side of

8

the road. Moreover, her risk of further harm increased substantially as Day, enraged and violent, held her against her will inside the moving vehicle.

Accordingly, we conclude that Day's movement of the victim in his vehicle was not a "criminologically insignificant circumstance attendant to some other crime." (Punctuation omitted.) *Garza v. State*, 284 Ga. at 702 (1). Instead, the jury was authorized to find that the State proved the necessary element of asportation beyond a reasonable doubt. See *Clark v. State*, 282 Ga. App. at 251 (1) (c) (While riding with the defendant, the victim asked him to take her home, but he refused. Instead, he kept driving and then stopped his vehicle and assaulted the victim. This evidence was sufficient to support a kidnapping conviction.). Day's conviction on the charge of kidnapping is affirmed.

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur.*