Nahmias, Justice,
concurring.
I join the Court’s opinion in full. Before a trial court requires a criminal defendant to wear an electronic shock device as a security measure in the courtroom, the court must: (1) explain why such an extraordinary security measure is needed to protect the safety and decorum of the proceeding and those participating in it; (2) consider alternative ways to address that need; (3) ensure that the defendant is aware of the operation of the device and, in particular, what conduct *542 by him may lead to a shock; and (4) provide an opportunity for the defendant to address these matters and present any other concerns about use of the shock device. See Nance v. State, 280 Ga. 125, 126-127 (623 SE2d 470) (2005).
Although more detailed discussion may have been preferable, the record in this case shows that the trial court sufficiently addressed these matters and articulated reasons supporting its ultimate exercise of discretion to require Weldon to wear a concealed shock device during his trial.[4] The record also shows that before and during the trial, Weldon did not identify any alleged shortcomings in the court’s findings or ask the court to consider any claim that the device was impairing his ability to confer with counsel or to focus on the proceeding, and he thereby forfeited his right to raise such objections on appeal. This case is therefore distinguishable from the federal case on which Weldon principally relies, United States v. Durham, 287 F3d 1297 (11th Cir. 2002), where the defendant filed a pretrial motion to prohibit use of a shock belt, asserting that the device would interfere with his rights to confer with counsel and to participate in his own defense, and requested an evidentiary hearing to address “a number of other questions relating to the operation and physical effects of the stun belt,” including “information about the error rate of the device, the criteria for triggering the belt, medical evidence that the shock would cause no long-term physical damage to the recipient, and information on the training of the deputy with responsibility for activating the belt,” which the Eleventh Circuit held that the trial court did not then sufficiently address on the record. Id. at 1301-1302, 1307-1308.
Having reviewed the case law and the parties’ arguments on this topic, however, I believe three additional points are worthy of mention. First, although one of this Court’s cases might be read to suggest that the trial court can simply “defer [ ] to the sheriff in such security matters,” Brown v. State, 268 Ga. 354, 359 (490 SE2d 75) (1997), I think it is clear that the court must ultimately determine for itself the need for extraordinary security measures and what measures to employ. In other words, the court may properly take into account, but may not defer entirely to, the views of the law enforcement personnel who are responsible for securing the courtroom but are not responsible for securing the defendant’s constitutional rights. The trial court in this case acted properly in this regard.
*543 Decided July 13, 2015.
G. Richard Stepp, for appellant.
Second, in considering alternative measures, the court and the parties should recognize that certain security measures may have different potential effects on different rights of the defendant. Thus, for example, the use of a concealed shock device poses less risk that the jury will prejudicially perceive the defendant as dangerous, when compared to the use of more visible security measures like guards or shackles — but the shock device may pose a greater risk to the defendant’s ability to consult with counsel and to focus on the proceeding. Thus, whether a particular security measure should be deemed a “less restrictive alternative” than another measure depends on what rights the defendant asserts as well as the particular circumstances of the case.
Finally, and relatedly, the test this Court once applied to a claim regarding use of shock device — whether it was “ ‘ “so inherently prejudicial as to pose an unacceptable threat to [the defendant’s] right to a fair trial,” ’ ” Young v. State, 269 Ga. 478, 479 (499 SE2d 60) (1998) (citation omitted), overruled on other grounds by Whitehead v. State, 287 Ga. 242, 249 (695 SE2d 255) (2010) — is properly applied only to determine whether conspicuous security measures, like an allegedly excessive number of guards, affected the defendant’s Sixth Amendment right to a fair trial, as in the case from which Young quoted, Chancey v. State, 256 Ga. 415, 434-435 (349 SE2d 717) (1986). Use of a properly concealed shock device will never meet that test — but the analysis should not end there if the defendant claims that the shock device also violated his Sixth Amendment right to counsel or his due-process-based right to be present at trial. See Brown, 268 Ga. at 359-360 (stating that “accepting the analogy to shackling, [a shock device] is prejudicial to a defendant only when visible to the jury,” citing cases akin to Chancey, but then going on to address and reject the defendant’s “contention that the device nonetheless had a detrimental psychological effect on his ability to participate in the trial”). In this regard, the Court of Appeals appears to have incorrectly read Young and Brown to hold that “[u]se of a restrictive security device is only prejudicial when visible to the jury,” Brashier v. State, 299 Ga. App. 107, 108 (681 SE2d 750) (2009) (emphasis added), although the defendant in Brashier may not have alleged any impairment of his ability to confer with counsel or attend to the trial, so the result in that case may still be correct.
With these additional observations, I join the Court’s opinion.
*544 Daniel J. Porter, District Attorney, Christopher M. Quinn, Thomas L. Williams, Assistant District Attorneys, for appellee.

 To the extent that the Court of Appeals has read our cases as not requiring a trial court to make any findings on the record regarding use of a shock device, see Lovelace v. State, 262 Ga. App. 690, 697 (586 SE2d 386) (2003), I believe that reading is erroneous.